**LAW OFFICES OF JERRY L. STEERING**
Jerry L. Steering (SBN 1225096)
Brenton Whitney Aitken Hands (SBN 308601)
4063 Birch Street, Suite 100
Newport Beach, California 92660
(949) 474-1849; (949) 474-1883 facsimile
jerrysteering@yahoo.com; jerry@steeringlaw.com
brentonaitken@gmail.com

Attorneys for plaintiff JANE DOE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE[1], <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF CLAREMONT, GABRIEL ARELLANES and JOHN DOES 1 through 10, inclusive, <br><br> Defendants. | Case No.: <br><br> COMPLAINT FOR DAMAGES FOR VIOLATION OF FEDERAL CONSTITUTIONAL RIGHTS UNDER COLOR OF STATE LAW (42 U.S.C. § 1983) CLAIM FOR UNREASONABLE SEIZURE OF PERSON (U.S. CONST. AMEND 4); CLAIM FOR EXCESSIVE / UNREASONABLE USE OF FORCE UPON PERSON (U.S. CONST. AMEND 4) AND CALIFORNIA STATE LAW CLAIMS FOR VIOLATION OF CAL. CIVIL CODE § 1708.5 (SEXUAL ASSAULT), BATTERY, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND VIOLATION OF CAL. CIVIL CODE § 52.1 (BANE ACT) <br><br> **JURY TRIAL DEMANDED** |

[1] A pseudonym for a real individual adult female whose real name is not shown here because this is a sexual assault case.

**COMES NOW** plaintiff JANE DOE[1], and shows this honorable court the following:

**JURISDICTIONAL ALLEGATIONS**

1.      As this action is brought under 42 U.S.C. § 1983, this court has jurisdiction over this case under its federal question jurisdiction pursuant to 28 U.S.C. § 1331.

2.      As the incidents complained of in this action occurred in the City of CITY OF CLAREMONT in Los Angeles County, State of California, and in the City of Montclair in San Bernardino County, State of California, both within the territorial jurisdiction of this court, venue properly lies in this court pursuant to 28 U.S.C. § 1391(b)(2).

**GENERAL ALLEGATIONS**

3.      Plaintiff JANE DOE[2], hereinafter referred to as "JANE DOE" and/or "plaintiff" and/or "plaintiff JANE DOE", is a natural person and an adult female, who, at all times complained of in this action, resided in the County of San Bernardino, State of California.

4.      Plaintiff JANE DOE[3], is named by the pseudonym "JANE DOE" in this action as this action primarily involves claims that defendant CLAREMONT POLICE DEPARTMENT POLICE OFFICER Gabriel Arellanes sexually assaulted plaintiff JANE DOE, and the publication of her true name in this action would cause her to suffer terrible public humiliation, and further severe mental and emotional pain, suffering

---

[1] A pseudonym for a real individual adult female whose real name is not shown here because this is a sexual assault case.
[2] A pseudonym for a real individual adult female whose real name is not shown here because this is a sexual assault case.
[3] A pseudonym for a real individual adult female whose real name is not shown here because this is a sexual assault case.

and distress from being sexually assaulted by CLAREMONT POLICE
DEPARTMENT POLICE OFFICER Gabriel Arellanes during the incident
complained of in this action.

5.    Plaintiff JANE DOE will directly inform the Claremont City
Attorney's Office as to plaintiff JANE DOE'S true identity, along with her
personal identifying information, so as to make sure that both defendant City of
Claremont and defendant Gabriel Arellanes are fully informed as to plaintiff
JANE DOE's actually identity.

6.    Defendant City of Claremont, hereinafter also referred to as "CITY",
is a municipal entity located in the State of California; within the territorial
jurisdiction of this court.

7.    Defendant Gabriel Arellanes, hereinafter referred to as
"ARELLANES," is, and at all times complained herein, was, a police officer with
the CLAREMONT Police Department. At all times complained of herein,
ARELLANES was acting as an individual person under the color of state law,
pursuant to his status as a police officer and a certified California peace officer,
and was acting in the course of and within the scope of his employment with
defendant City of Claremont [4].

8.    Defendant DOES 1 through 6, inclusive, are sworn police officers
and/or Investigators and/ Special Officers and/or a dispatchers and/or some other
public officer, public official or employee of defendant CITY[5], and/or otherwise
employed by the Claremont Police Department, or some other law enforcement
agency, who in some way committed some or all of the tortious actions and
constitutional violations complained of in this action and/or are otherwise
responsible for and liable to plaintiff for the acts complained of in this action,

---

[4] Or some other public entity.
[5] Or some other public entity.

COMPLAINT FOR DAMAGES
3

whose identities are, and remain unknown to plaintiff, who will amend her complaint to add and to show the actual names of said DOE defendants when ascertained by plaintiff.

9.    At all times complained of herein, DOES 1 through 6, inclusive, were acting as individual persons acting under the color of state law, pursuant to their authority as sworn peace officers and police officers and/or Special Officers and/or Supervisors (i.e. Sergeants, Lieutenants, Captains, Commanders, etc.) and/or dispatchers, employed by the Claremont Police Department or some other law enforcement agency, and were acting in the course of and within the scope of their employment with defendant CITY[6].

10.    Defendants DOES 7 through 10, inclusive, are sworn peace officers and police officers and/or the Chief of Police and/or Assistant Chiefs and or other final policy making officials such as the Claremont[7] City Manager and/or Commanders and/or Captains and/or Lieutenants and/or Sergeants and/or Detectives and/or other Supervisory personnel (such as) and/or policy making and/or final policy making officials, employed by CITY and/or with some other public entity, who are in some substantial way liable and responsible for, or otherwise proximately caused and/or contributed to the occurrences complained of by plaintiff in this action.

11.    Plaintiff is presently unaware of the identities of DOES 1 through 10, inclusive, and will amend her complaint to add and to show the actual names of said DOE defendants, when ascertained by plaintiff.

12.    At all times complained of herein, DOES 7 through 10, inclusive, were acting were acting as individual persons acting under the color of state law, pursuant to their authority as sworn peace officers and police officers and/or the

---

[6] Or some other public entity.
[7] Or some other public entity.

Chief of Police and/or Assistant Chiefs and or other final policy making officials such as the Claremont[8] City Manager and/or Commanders and/or Captains and/or Lieutenants and/or Sergeants and/or Detectives and/or other Supervisory personnel (such as) and/or policy making and/or final policy making officials, employed by CITY and/or with some other public entity, and were acting in the course of and within the scope of their employment with defendant the CITY[9].

13.    In addition to the above and foregoing, on March 18, 2024 plaintiff JANE DOE filed her California Government Tort Claim for Damages with defendant City of Claremont.

14.    Defendant City of Claremont did not reply to that March 18, 2024 California Government Tort Claim for Damages.

15.    Thereafter, on August 14, 2024, plaintiff JANE DOE filed her Amended California Government Tort Claim for Damages with defendant City of Claremont.

16.    Defendant City of Claremont has not replied to that Amended California Government Tort Claim for Damages

## FIRST CAUSE OF ACTION
### VIOLATION OF 42 U.S.C. § 1983
### UNDER FOURTH AMENDMENT[10]
### Unlawful / Unreasonable Seizure of Person
### (Against Defendant ARELLANES and DOES 1 through 10, inclusive)

17.    Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 16, inclusive, above, as if set forth in full herein.

18.    Shortly before midnight on the evening of February 16, 2024 JANE

---

[8] Or some other public entity.
[9] Or some other public entity.
[10] U.S. Const. Amend. 4.

DOE was engaged in romantic activities with the father of her children, in the back seat of a car on small dirt road on Mount Baldy Road, in Padua Hills, Claremont, California.

19.     JANE DOE was approached by defendant Claremont Police Department police officers ARELLANES and DOES 1 and 2.

20.     Defendants ARELLANES and/or DOES 1 and 2 noticed a glass pipe inside of JANE DOE's car and ordered her and the father of her children to get dressed and to exit the vehicle.

21.     JANE DOE and the father of her children both complied and got out of the vehicle and JANE DOE was handcuffed by defendants ARELLANES and/or DOES 1 and 2.

22.     Defendants ARELLANES and/or DOES 1 and 2 then searched JANE DOE's car, left the glass pipe in JANE DOE's car, left JANE DOE's children's father at JANE DOE's car, placed JANE DOE in his/their patrol car, and searched JANE DOE's car over her objection after asking for her consent to do so.

23.     Defendants ARELLANES and/or DOES 1 and 2 then called for back- up Claremont Police Department police officers came to the scene and DOES 3 and 4 arrived at the scene of the incident on Mount Baldy Road.

24.     Defendants ARELLANES and DOES 1 and 2 then frisked JANE DOE.

25.     After DOES 3 and 4 left the scene on Mt. Baldy Road, defendants ARELLANES and DOES 1 and 2 then told JANE DOE that she was under arrest and that her friend, the father of her children, could take the car.

26.     JANE DOE was told that she would be taken to the Pomona station to be searched by a female officer because there were no females at his station.

27.     On the way to the Pomona Police Station defendants ARELLANES

and DOES 1 and 2 asked JANE DOE some questions that made JANE DOE uncomfortable.

28.    He/they asked JANE DOE if she liked Mexicans?

29.    He/they also asked JANE DOE if he/they was/were the nicest policeman/policemen that JANE DOE had ever met?

30.    When JANE DOE asked why he/they asked that, he/they said because he/they could have arrested her and her friend and impounded the car, but he/they chose not to do so.

31.    On the way to the Pomona Police Department police station defendants ARELLANES and/or DOES 1 and 2 stopped his/their patrol car several times. Each time defendants ARELLANES and/or DOES 1 and 2 pressed JANE DOE's handcuffed body against the side of his/their patrol car with the front of his/their torso, he/they pressed his/their mid-body and genitals against JANE DOE's body, and ran his/their hands up and down along JANE DOE's legs, rear end, and the side and front of her torso; essentially feeling her up and groping her in a sexually assaultive manner.

32.    Defendants ARELLANES and/or DOES 1 and 2 also ran his/their hands up and down along JANE DOE's legs, rear end, and the side and front of her torso; essentially feeling her up and groping her in a sexually assaultive manner.

33.    When defendants ARELLANES and/or DOES 1 and 2 reached the Pomona Police Department with JANE DOE in the very early morning hours of February 17, 2024, defendant ARELLANES asked JANE DOE if she would "suck his dick", and JANE DOE said, "No, what are you talking about?"

34.    Thereafter, while in the Pomona Police Department parking lot defendants ARELLANES and/or DOES 1 and 2 again got JANE DOE out of the patrol car and again pressed JANE DOE's handcuffed body against the side of

his/their patrol car with the front of his/their torso, and he/they pressed his/their mid-body and genitals against JANE DOE's body, and ran his/their hands up and down along JANE DOE's legs, rear end, and the side and front of her torso; essentially feeling her up and groping her in a sexually assaultive manner.

35.     Thereafter, defendants ARELLANES and/or DOES 1 and 2 took JANE DOE drove JANE DOE to the Sally Port area of the parking lot of the Pomona Police Department for a short while.

36.     Defendants ARELLANES and/or DOES 1 and 2 then took JANE DOE into the Pomona Police Department to be searched by a female police officer there, and JANE DOE was then searched by a female police officer there.

37.     Defendants ARELLANES and/or DOES 1 and 2 then left the Pomona Police Department with JANE DOE and departed to the Claremont Police Department with JANE DOE handcuffed in the back seat of his/their patrol car.

38.     On the way to the Claremont Police Department police station defendants ARELLANES and/or DOES 1 and 2 stopped his/their patrol car(s) and again got JANE DOE out of the car and again frisked JANE DOE by pressing her against the side of his/their patrol car(s); again sexually assaulting her by feeling her up by his searching up and down her body with his/their hands.

39.     As defendants ARELLANES and/or DOES 1 and 2 was/were driving to and into the Sally Port of the Claremont Police Department, several times he/they told JANE DOE that he/they would make sure that she would be booked and processed quickly, and that ARELLANES and/or DOES 1 and 2 would be waiting for her when she got out of the Claremont Police Department jail and station following her booking and her being released on a Citation for violation of Cal. Health & Safety Code § 11364.

40.     While JANE DOE was incarcerated in the Claremont Police

Department Jail she was given a cup of water by defendants ARELLANES and/or DOES 2 and 3.

41.     After drinking that cup of water, JANE DOE felt that defendants ARELLANES and DOES 2 and 3 spiked that glass of water with some sort of drug, as later on she felt drugged and disoriented.

42.     JANE DOE was abnormally quickly put through the booking process at the Claremont Police Department's jail facility.

43.     When JANE DOE exited the jail she saw defendants ARELLANES and/or DOES 2 through 4, inclusive, his/their patrol car(s), waiting for her.

44.     When JANE DOE saw defendants ARELLANES and DOES 2 through 4, inclusive, waiting for her in his/their patrol car, she quickly walked to the other side of the intersection to let defendants ARELLANES and DOES 2 through 4, inclusive, know that she wanted to get and to stay away from him.

45.     Thereafter, JANE DOE continued to walk home in the early hours of February 17, 2024 from the Claremont Police Department and defendants ARELLANES and DOES 2 through 4, inclusive, followed her in his/their patrol car(s) and asked JANE DOE if she wanted a ride.

46.     JANE DOE had no car, no money and did not want to walk all of the way home, back to Highland, San Bernardino County, California.

47.     Accordingly, JANE DOE reluctantly accepted defendants ARELLANES' and DOES 2's through 4's, inclusive's offer to give her a ride, and said defendant(s) drove JANE DOE to the Montclair Transcenter[11] for her to catch a bus back home.

48.     When they arrived at the Montclair Transcenter defendant

_____

[11] Montclair Transcenter, 5091 Richton Street, Montclair, CA 91763.

COMPLAINT FOR DAMAGES

ARELLANES drove to a dark and remote area of the parking lot and parked his patrol car there.

49.    Defendant ARELLANES then walked around from the driver's seat / side of the patrol car to the passenger side of the patrol car, with his erect penis protruding out of his pants, and grabbed JANE DOE's head and physically forced JANE DOE's head down onto his penis and physically forced her to orally copulate him; all while JANE DOE was looking at defendant ARELLANES' pistol; scaring her to not resist her head being pulled down onto ARELLANES' penis[12], and scared not to orally copulate him, due to his power over her as a police officer, and scared that under the circumstances, ARELLANES would physically harm her for any refusal, resistance of failure to orally copulate him.

50.    After defendant ARELLANES ejaculated into and onto JANE DOE, he then left JANE DOE at the Montclair Transcenter.

51.    ARELLANES' actions in grabbing JANE DOE's head and physically forcing JANE DOE's head down onto his penis and physically forced her to orally copulate him constituted an unreasonable seizure of plaintiff JANE DOE, in violation of her right to be free from an unreasonable seizure of her person under the Fourth Amendment to the United States Constitution.

52.    As a direct and proximate result of the actions of said defendants ARELLANES and DOES 1 through 4, inclusive, complained of herein, plaintiff JANE DOE was: 1) substantially physically, mentally and emotionally injured, and suffered great physical, mental and emotional injury, distress, pain and suffering; 2) incurred attorney's fees and associated litigation and other related costs, and 3) incurred medical and psychological bills and costs, and other special

---

[12] Notwithstanding her actual initial physical resistance to having her head being pulled down onto ARELLANES' penis.

and general damages and expenses, all in an amount to be proven at trial, in excess of $20,000,000.00.

53.    The actions by said defendants were committed maliciously, oppressively and in reckless disregard of plaintiff's constitutional rights, sufficient for an award of punitive/exemplary damages against all defendants and each of them, save defendant CITY, in an amount to be proven at trial, in excess of $20,000,000.00 against each defendant.

### SECOND CAUSE OF ACTION
### USE OF UNREASONABLE FORCE ON PERSON
### UNDER FOURTH AMENDMENT[13]
### [42 U.S.C. § 1983]
### (Against defendants ARELLANES and DOES 1 through 10, inclusive)

54.    Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 53, inclusive, above, as if set forth in full herein.

55.    As shown above, shortly before midnight on the evening of February 16, 2024 JANE DOE was engaged in romantic activities with the father of her children, in the back seat of a car on small dirt road on Mount Baldy Road, in Padua Hills, Claremont, California.

56.    Also as shown above, JANE DOE was approached by defendant Claremont Police Department police officers ARELLANES and DOES 1 and 2.

57.    Also as shown above, defendants ARELLANES and/or DOES 1 and 2 noticed a glass pipe inside of JANE DOE's car and ordered her and the father of her children to get dressed and to exit the vehicle.

58.    Also as shown above, JANE DOE and the father of her children both

_____

[13] U.S. Const. Amend. 4.

COMPLAINT FOR DAMAGES
11

complied and got out of the vehicle and JANE DOE was handcuffed by defendants ARELLANES and/or DOES 1 and 2.

59.     Also as shown above, defendants ARELLANES and/or DOES 1 and 2 then searched JANE DOE's car, left the glass pipe in JANE DOE's car, left JANE DOE's children's father at JANE DOE's car, placed JANE DOE in his/their patrol car, and searched JANE DOE's car over her objection after asking for her consent to do so.

60.     Also as shown above, defendants ARELLANES and/or DOES 1 and 2 then called for back-up Claremont Police Department police officers came to the scene and DOES 3 and 4 arrived at the scene of the incident on Mount Baldy Road.

61.     Also as shown above, defendants ARELLANES and DOES 1 and 2 then frisked JANE DOE.

62.     Also as shown above, after DOES 3 and 4 left the scene on Mt. Baldy Road, defendants ARELLANES and DOES 1 and 2 then told JANE DOE that she was under arrest and that her friend, the father of her children, could take the car.

63.     Also as shown above, JANE DOE was told that she would be taken to the Pomona station to be searched by a female officer because there were no females at his station.

64.     Also as shown above, on the way to the Pomona Police Station defendants ARELLANES and DOES 1 and 2 asked JANE DOE some questions that made JANE DOE uncomfortable.

65.     Also as shown above, he/they asked JANE DOE if she liked Mexicans?

66.     Also as shown above, he/they also asked JANE DOE if he/they was/were the nicest policeman/policemen that JANE DOE had ever met?

67.     Also as shown above, when JANE DOE asked why he/they asked

that, he/they said because he/they could have arrested her and her friend and impounded the car, but he/they chose not to do so.

68.    Also as shown above, on the way to the Pomona Police Department police station defendants ARELLANES and/or DOES 1 and 2 stopped his/their patrol car several times. Each time defendants ARELLANES and/or DOES 1 and 2 pressed JANE DOE's handcuffed body against the side of his/their patrol car with the front of his/their torso, he/they pressed his/their mid-body and genitals against JANE DOE's body, and ran his/their hands up and down along JANE DOE's legs, rear end, and the side and front of her torso; essentially feeling her up and groping her in a sexually assaultive manner.

69.    Also as shown above, defendants ARELLANES and/or DOES 1 and 2 also ran his/their hands up and down along JANE DOE's legs, rear end, and the side and front of her torso; essentially feeling her up and groping her in a sexually assaultive manner.

70.    Also as shown above, when defendants ARELLANES and/or DOES 1 and 2 reached the Pomona Police Department with JANE DOE in the very early hours of February 17, 2024, defendant ARELLANES asked JANE DOE if she would "suck his dick", and JANE DOE said, "No, what are you talking about?"

71.    Also as shown above, thereafter, while in the Pomona Police Department parking lot defendants ARELLANES and/or DOES 1 and 2 again got JANE DOE out of the patrol car and again pressed JANE DOE's handcuffed body against the side of his/their patrol car with the front of his/their torso, and he/they pressed his/their mid-body and genitals against JANE DOE's body, and ran his/their hands up and down along JANE DOE's legs, rear end, and the side and front of her torso; essentially feeling her up and groping her in a sexually assaultive manner.

72.    Also as shown above, thereafter, defendants ARELLANES and/or

DOES 1 and 2 took JANE DOE and drove JANE DOE to the Sally Port area of the parking lot of the Pomona Police Department for a short while.

73.    Also as shown above, defendants ARELLANES and/or DOES 1 and 2 then took JANE DOE into the Pomona Police Department to be searched by a female police officer there, and JANE DOE was then searched by a female police officer there.

74.    Also as shown above, defendants ARELLANES and/or DOES 1 and 2 then left the Pomona Police Department with JANE DOE and departed to the Claremont Police Department with JANE DOE handcuffed in the back seat of his/their patrol car.

75.    Also as shown above, on the way to the Claremont Police Department police station defendants ARELLANES and/or DOES 1 and 2 stopped his/their patrol car(s) and again got JANE DOE out of the car and again frisked JANE DOE by pressing her against the side of his/their patrol car(s); again sexually assaulting her by feeling her up by his searching up and down her body with his/their hands.

76.    Also as shown above, as defendants ARELLANES and/or DOES 1 and 2 was/were driving to and into the Sally Port of the Claremont Police Department, several times he/they told JANE DOE that he/they would make sure that she would be booked and processed quickly, and that ARELLANES and/or DOES 1 and 2 would be waiting for her when she got out of the Claremont Police Department jail and station following her booking and her being released on a Citation for violation of Cal. Health & Safety Code § 11364.

77.    Also as shown above, while JANE DOE was incarcerated in the Claremont Police Department Jail she was given a cup of water by defendants ARELLANES and/or DOES 2 and 3.

78.    Also as shown above, after drinking that cup of water, JANE DOE

felt that defendants ARELLANES and DOES 2 and 3 spiked that glass of water with some sort of drug, as later on she felt drugged and disoriented.

79.    Also as shown above, JANE DOE was abnormally quickly put through the booking process at the Claremont Police Department's jail facility.

80.    Also as shown above, when JANE DOE exited the jail she saw defendants ARELLANES and/or DOES 2 through 4, inclusive, his/their patrol car(s), waiting for her.

81.    Also as shown above, when JANE DOE saw defendants ARELLANES and DOES 2 through 4, inclusive, waiting for her in his/their patrol car, she quickly walked to the other side of the intersection to let defendants ARELLANES and DOES 2 through 4, inclusive, know that she wanted to get and to stay away from him. However, JANE DOE was now under the influence of whatever drug that defendants ARELLANES and DOES 2 and 3 spiked that glass of water with, and she had difficulty walking as she was now disoriented from that drug.

82.    Also as shown above, thereafter, JANE DOE continued to walk home in the early hours of February 17, 2024 from the Claremont Police Department and defendants ARELLANES and DOES 2 through 4, inclusive, followed her in his/their patrol car(s) and asked JANE DOE if she wanted a ride.

83.    Also as shown above, JANE DOE had no car and no money, was disoriented from being drugged, and did not want to, and did not feel that she could walk all of the way home, back to Highland, San Bernardino County, California in her drugged and disoriented state.

84.    Also as shown above, accordingly, JANE DOE reluctantly accepted

defendants ARELLANES' and DOES 2's through 4's, inclusive's offer to give her a ride, and said defendant(s) drove JANE DOE to the Montclair Transcenter[14] for her to catch a bus back home, in large part due to her disoriented stated.

85.    Also as shown above, when they arrived at the Montclair Transcenter defendant ARELLANES drove to a dark and remote area of the parking lot and parked his patrol car there.

86.    Also as shown above, defendant ARELLANES then walked around from the driver's seat/side of the patrol car to the passenger side of the patrol car, with his erect penis protruding out of his pants, and grabbed JANE DOE's head and physically forced JANE DOE's head down onto his penis and physically forced her to orally copulate him, all while JANE DOE was looking at defendant ARELLANES' pistol, all while JANE DOE was in a drugged and disoriented state caused by ARELLANES and DOES 2 through 4, inclusive drugging her, all while ARELLANES was scaring her to not resist her head being pulled down onto ARELLANES' penis[15], and all while JANE DOE was scared not to orally copulate him due to his power over her as a police officer, due to his violent behavior, and all while she was scared that under the circumstances, including her drugged and disoriented state, that ARELLANES would physically harm her for any refusal, resistance of failure to orally copulate him.

87.    After defendant ARELLANES ejaculated into and onto JANE DOE, he then left JANE DOE at the Montclair Transcenter.

88.    ARELLANES' actions in grabbing JANE DOE's head and physically forcing JANE DOE's head down onto his penis and physically forcing

---

[14] Montclair Transcenter, 5091 Richton Street, Montclair, CA 91763.
[15] Notwithstanding her actual initial physical resistance to having her head being pulled down onto ARELLANES' penis.

her to orally copulate him, under the circumstances described above, constituted the use of excessive and unreasonable force and violence of plaintiff JANE DOE, in violation of her right to be free from the use of excessive and unreasonable force and violence upon her person under the Fourth Amendment to the United States Constitution.

89.     In addition, when defendants ARELLANES and DOES 1 and 2 handcuffed plaintiff JANE DOE, he/they had cinched down the handcuffs excessively tight, thereby causing plaintiff JANE DOE agonizing pain and suffering, and injuring her wrists; said conduct also in violation of her right to be free from the use of excessive and unreasonable force and violence upon her person under the Fourth Amendment to the United States Constitution.

90.     As a direct and proximate result of the actions of said defendants ARELLANES and DOES 1 through 4, inclusive, complained of herein, plaintiff JANE DOE was: 1) substantially physically, mentally and emotionally injured, and suffered great physical, mental and emotional injury, distress, pain and suffering; 2) incurred attorney's fees and associated litigation and other related costs, and 3) incurred medical and psychological bills and costs, and other special and general damages and expenses, all in an amount to be proven at trial, in excess of $20,000,000.00.

91.     The actions by said defendants were committed maliciously, oppressively and in reckless disregard of plaintiff's constitutional rights, sufficient for an award of punitive/exemplary damages against all defendants and each of them, save defendant CITY, in an amount to be proven at trial, in excess of $20,000,000.00 against each defendant.

**THIRD CAUSE OF ACTION**
**VIOLATION OF SUBSTANTIVE DUE PROCESS**
**UNDER FOURTEENTH AMENDMENT[16]**
**[42 U.S.C. § 1983]**
**(Against defendants ARELLANES and DOES 1 through 10, inclusive)**

92.    Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 91, inclusive, above, as if set forth in full herein.

93.    As shown above, shortly before midnight on the evening of February 16, 2024 JANE DOE was engaged in romantic activities with the father of her children, in the back seat of a car on small dirt road on Mount Baldy Road, in Padua Hills, Claremont, California.

94.    Also as shown above, JANE DOE was approached by defendant Claremont Police Department police officers ARELLANES and DOES 1 and 2.

95.    Also as shown above, defendants ARELLANES and/or DOES 1 and 2 noticed a glass pipe inside of JANE DOE's car and ordered her and the father of her children to get dressed and to exit the vehicle.

96.    Also as shown above, JANE DOE and the father of her children both complied and got out of the vehicle and JANE DOE was handcuffed by defendants ARELLANES and/or DOES 1 and 2.

97.    Also as shown above, defendants ARELLANES and/or DOES 1 and 2 then searched JANE DOE's car, left the glass pipe in JANE DOE's car, left JANE DOE's children's father at JANE DOE's car, placed JANE DOE in his/their patrol car, and searched JANE DOE's car over her objection after asking for her consent to do so.

_____

[16] U.S. Const. Amend. 14.

COMPLAINT FOR DAMAGES
18

98.    Also as shown above, defendants ARELLANES and/or DOES 1 and 2 then called for back-up Claremont Police Department police officers came to the scene and DOES 3 and 4 arrived at the scene of the incident on Mount Baldy Road.

99.    Also as shown above, defendants ARELLANES and DOES 1 and 2 then frisked JANE DOE.

100.    Also as shown above, after DOES 3 and 4 left the scene on Mt. Baldy Road, defendants ARELLANES and DOES 1 and 2 then told JANE DOE that she was under arrest and that her friend, the father of her children, could take the car.

101.    Also as shown above, JANE DOE was told that she would be taken to the Pomona station to be searched by a female officer because there were no females at his station.

102.    Also as shown above, on the way to the Pomona Police Station defendants ARELLANES and DOES 1 and 2 asked JANE DOE some questions that made JANE DOE uncomfortable.

103.    Also as shown above, he/they asked JANE DOE if she liked Mexicans?

104.    Also as shown above, he/they also asked JANE DOE if he/they was/were the nicest policeman/policemen that JANE DOE had ever met?

105.    Also as shown above, when JANE DOE asked why he/they asked that, he/they said because he/they could have arrested her and her friend and impounded the car, but he/they chose not to do so.

106.    Also as shown above, on the way to the Pomona Police Department police station defendants ARELLANES and/or DOES 1 and 2 stopped his/their patrol car several times. Each time defendants ARELLANES and/or DOES 1 and 2 pressed JANE DOE's handcuffed body against the side of his/their patrol car with the front of his/their torso, he/they pressed his/their mid-body and genitals

COMPLAINT FOR DAMAGES
19

against JANE DOE's body, and ran his/their hands up and down along JANE DOE's legs, rear end, and the side and front of her torso; essentially feeling her up and groping her in a sexually assaultive manner.

107.   Also as shown above, defendants ARELLANES and/or DOES 1 and 2 also ran his/their hands up and down along JANE DOE's legs, rear end, and the side and front of her torso; essentially feeling her up and groping her in a sexually assaultive manner.

108.   Also as shown above, when defendants ARELLANES and/or DOES 1 and 2 reached the Pomona Police Department with JANE DOE in the very early hours of February 17, 2024, defendant ARELLANES asked JANE DOE if she would "suck his dick", and JANE DOE said, "No, what are you talking about?"

109.   Also as shown above, thereafter, while in the Pomona Police Department parking lot defendants ARELLANES and/or DOES 1 and 2 again got JANE DOE out of the patrol car and again pressed JANE DOE's handcuffed body against the side of his/their patrol car with the front of his/their torso, and he/they pressed his/their mid-body and genitals against JANE DOE's body, and ran his/their hands up and down along JANE DOE's legs, rear end, and the side and front of her torso; essentially feeling her up and groping her in a sexually assaultive manner.

110.   Also as shown above, thereafter, defendants ARELLANES and/or DOES 1 and 2 took JANE DOE and drove JANE DOE to the Sally Port area of the parking lot of the Pomona Police Department for a short while.

111.   Also as shown above, defendants ARELLANES and/or DOES 1 and 2 then took JANE DOE into the Pomona Police Department to be searched by a female police officer there, and JANE DOE was then searched by a female police officer there.

112.   Also as shown above, defendants ARELLANES and/or DOES 1 and

2 then left the Pomona Police Department with JANE DOE and departed to the Claremont Police Department with JANE DOE handcuffed in the back seat of his/their patrol car.

113.    Also as shown above, on the way to the Claremont Police Department police station defendants ARELLANES and/or DOES 1 and 2 stopped his/their patrol car(s) and again got JANE DOE out of the car and again frisked JANE DOE by pressing her against the side of his/their patrol car(s); again sexually assaulting her by feeling her up by his searching up and down her body with his/their hands.

114.    Also as shown above, as defendants ARELLANES and/or DOES 1 and 2 was/were driving to and into the Sally Port of the Claremont Police Department, several times he/they told JANE DOE that he/they would make sure that she would be booked and processed quickly, and that ARELLANES and/or DOES 1 and 2 would be waiting for her when she got out of the Claremont Police Department jail and station following her booking and her being released on a Citation for violation of Cal. Health & Safety Code § 11364.

115.    Also as shown above, while JANE DOE was incarcerated in the Claremont Police Department Jail she was given a cup of water by defendants ARELLANES and/or DOES 2 and 3.

116.    Also as shown above, after drinking that cup of water, JANE DOE felt that defendants ARELLANES and DOES 2 and 3 spiked that glass of water with some sort of drug, as later on she felt drugged and disoriented.

117.    Also as shown above, JANE DOE was abnormally quickly put through the booking process at the Claremont Police Department's jail facility.

118.    Also as shown above, when JANE DOE exited the jail she saw defendants ARELLANES and/or DOES 2 through 4, inclusive, his/their patrol car(s), waiting for her.

119.   Also as shown above, when JANE DOE saw defendants ARELLANES and DOES 2 through 4, inclusive, waiting for her in his/their patrol car, she quickly walked to the other side of the intersection to let defendants ARELLANES and DOES 2 through 4, inclusive, know that she wanted to get and to stay away from him. However, JANE DOE was now under the influence of whatever drug that defendants ARELLANES and DOES 2 and 3 spiked that glass of water with, and she had difficulty walking as she was now disoriented from that drug.

120.   Also as shown above, thereafter, JANE DOE continued to walk home in the early hours of February 17, 2024 from the Claremont Police Department and defendants ARELLANES and DOES 2 through 4, inclusive, followed her in his/their patrol car(s) and asked JANE DOE if she wanted a ride.

121.   Also as shown above, JANE DOE had no car and no money, was disoriented from being drugged, and did not want to, and did not feel that she could walk all of the way home, back to Highland, San Bernardino County, California in her drugged and disoriented state.

122.   Also as shown above, accordingly, JANE DOE reluctantly accepted defendants ARELLANES' and DOES 2's through 4's, inclusive's offer to give her a ride, and said defendant(s) drove JANE DOE to the Montclair Transcenter[17] for her to catch a bus back home, in large part due to her disoriented stated.

123.   Also as shown above, when they arrived at the Montclair Transcenter defendant ARELLANES drove to a dark and remote area of the parking lot and parked his patrol car there.

_____

[17] Montclair Transcenter, 5091 Richton Street, Montclair, CA 91763.

COMPLAINT FOR DAMAGES

22

124.   Also as shown above, defendant ARELLANES then walked around from the driver's seat/side of the patrol car to the passenger side of the patrol car, with his erect penis protruding out of his pants, and grabbed JANE DOE's head and physically forced JANE DOE's head down onto his penis and physically forced her to orally copulate him, all while JANE DOE was looking at defendant ARELLANES' pistol, all while JANE DOE was in a drugged and disoriented state caused by ARELLANES and DOES 2 through 4, inclusive drugging her, all while ARELLANES was scaring her to not resist her head being pulled down onto ARELLANES' penis[18], and all while JANE DOE was scared not to orally copulate him due to his power over her as a police officer, due to his violent behavior, and all while she was scared that under the circumstances, including her drugged and disoriented state, that ARELLANES would physically harm her for any refusal, resistance of failure to orally copulate him.

125.   After defendant ARELLANES ejaculated into and onto JANE DOE, he then left JANE DOE at the Montclair Transcenter.

126.   ARELLANES' actions in repeated searches involving the groping of plaintiff JANE DOE described above, the drugging JANE DOE and in her drugged state grabbing JANE DOE's head and physically forcing JANE DOE's head down onto his erect penis and physically forcing her to orally copulate him, under the circumstances described above, constituted conduct that was shocking to the conscience and in violation of her right to substantive due process under the Fourteenth Amendment to the United States Constitution.

127.   As a direct and proximate result of the actions of said defendants

---

[18] Notwithstanding her actual initial physical resistance to having her head being pulled down onto ARELLANES' penis.

ARELLANES and DOES 1 through 4, inclusive, complained of herein, plaintiff JANE DOE was: 1) substantially physically, mentally and emotionally injured, and suffered great physical, mental and emotional injury, distress, pain and suffering; 2) incurred attorney's fees and associated litigation and other related costs, and 3) incurred medical and psychological bills and costs, and other special and general damages and expenses, all in an amount to be proven at trial, in excess of $20,000,000.00.

128.    The actions by said defendants were committed maliciously, oppressively and in reckless disregard of plaintiff's constitutional rights, sufficient for an award of punitive/exemplary damages against all defendants and each of them, save defendant CITY, in an amount to be proven at trial, in excess of $20,000,000.00.

**FOURTH CAUSE OF ACTION**
**CALIFORNIA STATE LAW CLAIM**
**VIOLATION OF CAL. CIVIL CODE § 1708.5**
**(Against all Defendants)**

129.    Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 128, inclusive, above, as if set forth in full herein.

130.    As shown above, shortly before midnight on the evening of February 16, 2024 JANE DOE was engaged in romantic activities with the father of her children, in the back seat of a car on small dirt road on Mount Baldy Road, in Padua Hills, Claremont, California.

131.    Also as shown above, JANE DOE was approached by defendant Claremont Police Department police officers ARELLANES and DOES 1 and 2.

132.    Also as shown above, defendants ARELLANES and/or DOES 1 and 2 noticed a glass pipe inside of JANE DOE's car and ordered her and the father of her children to get dressed and to exit the vehicle.

133.    Also as shown above, JANE DOE and the father of her children both complied and got out of the vehicle and JANE DOE was handcuffed by defendants ARELLANES and/or DOES 1 and 2.

134.    Also as shown above, defendants ARELLANES and/or DOES 1 and 2 then searched JANE DOE's car, left the glass pipe in JANE DOE's car, left JANE DOE's children's father at JANE DOE's car, placed JANE DOE in his/their patrol car, and searched JANE DOE's car over her objection after asking for her consent to do so.

135.    Also as shown above, defendants ARELLANES and/or DOES 1 and 2 then called for back-up Claremont Police Department police officers came to the scene and DOES 3 and 4 arrived at the scene of the incident on Mount Baldy Road.

136.    Also as shown above, defendants ARELLANES and DOES 1 and 2 then frisked JANE DOE.

137.    Also as shown above, after DOES 3 and 4 left the scene on Mt. Baldy Road, defendants ARELLANES and DOES 1 and 2 then told JANE DOE that she was under arrest and that her friend, the father of her children, could take the car.

138.    Also as shown above, JANE DOE was told that she would be taken to the Pomona station to be searched by a female officer because there were no females at his station.

139.    Also as shown above, on the way to the Pomona Police Station defendants ARELLANES and DOES 1 and 2 asked JANE DOE some questions that made JANE DOE uncomfortable.

140.    Also as shown above, he/they asked JANE DOE if she liked Mexicans?

141.    Also as shown above, he/they also asked JANE DOE if he/they was/were the nicest policeman/policemen that JANE DOE had ever met?

142.   Also as shown above, when JANE DOE asked why he/they asked that, he/they said because he/they could have arrested her and her friend and impounded the car, but he/they chose not to do so.

143.   Also as shown above, on the way to the Pomona Police Department police station defendants ARELLANES and/or DOES 1 and 2 stopped his/their patrol car several times. Each time defendants ARELLANES and/or DOES 1 and 2 pressed JANE DOE's handcuffed body against the side of his/their patrol car with the front of his/their torso, he/they pressed his/their mid-body and genitals against JANE DOE's body, and ran his/their hands up and down along JANE DOE's legs, rear end, and the side and front of her torso; essentially feeling her up and groping her in a sexually assaultive manner.

144.   Also as shown above, defendants ARELLANES and/or DOES 1 and 2 also ran his/their hands up and down along JANE DOE's legs, rear end, and the side and front of her torso; essentially feeling her up and groping her in a sexually assaultive manner.

145.   Also as shown above, when defendants ARELLANES and/or DOES 1 and 2 reached the Pomona Police Department with JANE DOE in the very early hours of February 17, 2024, defendant ARELLANES asked JANE DOE if she would "suck his dick", and JANE DOE said, "No, what are you talking about?"

146.   Also as shown above, thereafter, while in the Pomona Police Department parking lot defendants ARELLANES and/or DOES 1 and 2 again got JANE DOE out of the patrol car and again pressed JANE DOE's handcuffed body against the side of his/their patrol car with the front of his/their torso, and he/they pressed his/their mid-body and genitals against JANE DOE's body, and ran his/their hands up and down along JANE DOE's legs, rear end, and the side and front of her torso; essentially feeling her up and groping her in a sexually assaultive manner.

147.   Also as shown above, thereafter, defendants ARELLANES and/or DOES 1 and 2 took JANE DOE and drove JANE DOE to the Sally Port area of the parking lot of the Pomona Police Department for a short while.

148.   Also as shown above, defendants ARELLANES and/or DOES 1 and 2 then took JANE DOE into the Pomona Police Department to be searched by a female police officer there, and JANE DOE was then searched by a female police officer there.

149.   Also as shown above, defendants ARELLANES and/or DOES 1 and 2 then left the Pomona Police Department with JANE DOE and departed to the Claremont Police Department with JANE DOE handcuffed in the back seat of his/their patrol car.

150.   Also as shown above, on the way to the Claremont Police Department police station defendants ARELLANES and/or DOES 1 and 2 stopped his/their patrol car(s) and again got JANE DOE out of the car and again frisked JANE DOE by pressing her against the side of his/their patrol car(s); again sexually assaulting her by feeling her up by his searching up and down her body with his/their hands.

151.   Also as shown above, as defendants ARELLANES and/or DOES 1 and 2 was/were driving to and into the Sally Port of the Claremont Police Department, several times he/they told JANE DOE that he/they would make sure that she would be booked and processed quickly, and that ARELLANES and/or DOES 1 and 2 would be waiting for her when she got out of the Claremont Police Department jail and station following her booking and her being released on a Citation for violation of Cal. Health & Safety Code § 11364.

152.   Also as shown above, while JANE DOE was incarcerated in the Claremont Police Department Jail she was given a cup of water by defendants ARELLANES and/or DOES 2 and 3.

153.    Also as shown above, after drinking that cup of water, JANE DOE felt that defendants ARELLANES and DOES 2 and 3 spiked that glass of water with some sort of drug, as later on she felt drugged and disoriented.

154.    Also as shown above, JANE DOE was abnormally quickly put through the booking process at the Claremont Police Department's jail facility.

155.    Also as shown above, when JANE DOE exited the jail she saw defendants ARELLANES and/or DOES 2 through 4, inclusive, his/their patrol car(s), waiting for her.

156.    Also as shown above, when JANE DOE saw defendants ARELLANES and DOES 2 through 4, inclusive, waiting for her in his/their patrol car, she quickly walked to the other side of the intersection to let defendants ARELLANES and DOES 2 through 4, inclusive, know that she wanted to get and to stay away from him. However, JANE DOE was now under the influence of whatever drug that defendants ARELLANES and DOES 2 and 3 spiked that glass of water with, and she had difficulty walking as she was now disoriented from that drug.

157.    Also as shown above, thereafter, JANE DOE continued to walk home in the early hours of February 17, 2024 from the Claremont Police Department and defendants ARELLANES and DOES 2 through 4, inclusive, followed her in his/their patrol car(s) and asked JANE DOE if she wanted a ride.

158.    Also as shown above, JANE DOE had no car and no money, was disoriented from being drugged, and did not want to, and did not feel that she could walk all of the way home, back to Highland, San Bernardino County, California in her drugged and disoriented state.

159.    Also as shown above, accordingly, JANE DOE reluctantly accepted defendants ARELLANES' and DOES 2's through 4's, inclusive's offer to give her

a ride, and said defendant(s) drove JANE DOE to the Montclair Transcenter[19] for her to catch a bus back home, in large part due to her disoriented stated.

160.    Also as shown above, when they arrived at the Montclair Transcenter defendant ARELLANES drove to a dark and remote area of the parking lot and parked his patrol car there.

161.    Also as shown above, defendant ARELLANES then walked around from the driver's seat/side of the patrol car to the passenger side of the patrol car, with his erect penis protruding out of his pants, and grabbed JANE DOE's head and physically forced JANE DOE's head down onto his penis and physically forced her to orally copulate him, all while JANE DOE was looking at defendant ARELLANES' pistol, all while JANE DOE was in a drugged and disoriented state caused by ARELLANES and DOES 2 through 4, inclusive drugging her, all while ARELLANES was scaring her to not resist her head being pulled down onto ARELLANES' penis[20], and all while JANE DOE was scared not to orally copulate him due to his power over her as a police officer, due to his violent behavior, and all while she was scared that under the circumstances, including her drugged and disoriented state, that ARELLANES would physically harm her for any refusal, resistance of failure to orally copulate him.

162.    After defendant ARELLANES ejaculated into and onto JANE DOE, he then left JANE DOE at the Montclair Transcenter.

163.    As alleged above, defendants ARELLANES and DOES 1 through 4, inclusive, intended to cause harmful offensive contact with plaintiff JANE DOE by groping her buttocks, the inside of her crotch area and her breasts when he

---

[19] Montclair Transcenter, 5091 Richton Street, Montclair, CA 91763.
[20] Notwithstanding her actual initial physical resistance to having her head being pulled down onto ARELLANES' penis.

repeatedly patted her down and searched her.

164. In addition, also as alleged above, defendants ARELLANES and DOES 1 through 4, inclusive, drugging JANE DOE, and in her drugged state grabbing JANE DOE's head and physically forcing JANE DOE's head down onto his erect penis and physically forcing her to orally copulate him.

165. Plaintiff JANE DOE did not consent to those actions by the defendants ARELLANES and DOES 1 through 4, inclusive, of groping plaintiff JANE DOE's buttocks, the inside of her crotch area and her breasts when he repeatedly patted her down and searched her, and she did not consent to said defendants drugging her, and in her drugged state grabbing JANE DOE's head and physically forcing JANE DOE's head down onto defendant ARELLANES' erect penis and physically forcing her to orally copulate him.

166. Plaintiff JANE DOE was severely harmed and offended by defendants ARELLANES' and DOES 1 through 4, inclusive's conduct.

167. As shown above, during the February 16, 2024 through February 17, 2024 incident complained of above, defendants ARELLANES and DOES 1 through 10, inclusive, were acting in the course of and within the scope of their employment with defendant City of Claremont.

168. Defendants City of Claremont, ARELLANES and DOES 1 through 10, inclusive, are liable to plaintiff JANE DOE for her sexual battery pursuant to Cal. Civil Code § 1708.5, and via Cal. Gov't Code §§ 815.2 and 820.

169. As a direct and proximate result of the actions of said defendants ARELLANES and DOES 1 through 4, inclusive, complained of herein, plaintiff JANE DOE was: 1) substantially physically, mentally and emotionally injured, and suffered great physical, mental and emotional injury, distress, pain and suffering; 2) incurred attorney's fees and associated litigation and other related costs, and 3) incurred medical and psychological bills and costs, and other special

and general damages and expenses, all in an amount to be proven at trial, in excess of $20,000,000.00.

170. The actions by said defendants were committed maliciously, oppressively and in reckless disregard of plaintiff's constitutional rights, sufficient for an award of punitive/exemplary damages against all defendants and each of them, save defendant CITY, in an amount to be proven at trial, in excess of $20,000,000.00 against each defendant, save defendant City of Claremont.

## FIFTH CAUSE OF ACTION
## CALIFORNIA STATE LAW CLAIM
## BATTERY
## (Against all Defendants)

171.    Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 170, inclusive, above, as if set forth in full herein.

172.    As shown above, shortly before midnight on the evening of February 16, 2024 JANE DOE was engaged in romantic activities with the father of her children, in the back seat of a car on small dirt road on Mount Baldy Road, in Padua Hills, Claremont, California.

173.    Also as shown above, JANE DOE was approached by defendant Claremont Police Department police officers ARELLANES and DOES 1 and 2.

174.    Also as shown above, defendants ARELLANES and/or DOES 1 and 2 noticed a glass pipe inside of JANE DOE's car and ordered her and the father of her children to get dressed and to exit the vehicle.

175.    Also as shown above, JANE DOE and the father of her children both complied and got out of the vehicle and JANE DOE was handcuffed by defendants ARELLANES and/or DOES 1 and 2.

176.    Also as shown above, defendants ARELLANES and/or DOES 1 and

2 then searched JANE DOE's car, left the glass pipe in JANE DOE's car, left JANE DOE's children's father at JANE DOE's car, placed JANE DOE in his/their patrol car, and searched JANE DOE's car over her objection after asking for her consent to do so.

177.    Also as shown above, defendants ARELLANES and/or DOES 1 and 2 then called for back-up Claremont Police Department police officers came to the scene and DOES 3 and 4 arrived at the scene of the incident on Mount Baldy Road.

178.    Also as shown above, defendants ARELLANES and DOES 1 and 2 then frisked JANE DOE.

179.    Also as shown above, after DOES 3 and 4 left the scene on Mt. Baldy Road, defendants ARELLANES and DOES 1 and 2 then told JANE DOE that she was under arrest and that her friend, the father of her children, could take the car.

180.    Also as shown above, JANE DOE was told that she would be taken to the Pomona station to be searched by a female officer because there were no females at his station.

181.    Also as shown above, on the way to the Pomona Police Station defendants ARELLANES and DOES 1 and 2 asked JANE DOE some questions that made JANE DOE uncomfortable.

182.    Also as shown above, he/they asked JANE DOE if she liked Mexicans?

183.    Also as shown above, he/they also asked JANE DOE if he/they was/were the nicest policeman/policemen that JANE DOE had ever met?

184.    Also as shown above, when JANE DOE asked why he/they asked that, he/they said because he/they could have arrested her and her friend and impounded the car, but he/they chose not to do so.

185.    Also as shown above, on the way to the Pomona Police Department

police station defendants ARELLANES and/or DOES 1 and 2 stopped his/their patrol car several times. Each time defendants ARELLANES and/or DOES 1 and 2 pressed JANE DOE's handcuffed body against the side of his/their patrol car with the front of his/their torso, he/they pressed his/their mid-body and genitals against JANE DOE's body, and ran his/their hands up and down along JANE DOE's legs, rear end, and the side and front of her torso; essentially feeling her up and groping her in a sexually assaultive manner.

186.    Also as shown above, defendants ARELLANES and/or DOES 1 and 2 also ran his/their hands up and down along JANE DOE's legs, rear end, and the side and front of her torso; essentially feeling her up and groping her in a sexually assaultive manner.

187.    Also as shown above, when defendants ARELLANES and/or DOES 1 and 2 reached the Pomona Police Department with JANE DOE in the very early hours of February 17, 2024, defendant ARELLANES asked JANE DOE if she would "suck his dick", and JANE DOE said, "No, what are you talking about?"

188.    Also as shown above, thereafter, while in the Pomona Police Department parking lot defendants ARELLANES and/or DOES 1 and 2 again got JANE DOE out of the patrol car and again pressed JANE DOE's handcuffed body against the side of his/their patrol car with the front of his/their torso, and he/they pressed his/their mid-body and genitals against JANE DOE's body, and ran his/their hands up and down along JANE DOE's legs, rear end, and the side and front of her torso; essentially feeling her up and groping her in a sexually assaultive manner.

189.    Also as shown above, thereafter, defendants ARELLANES and/or DOES 1 and 2 took JANE DOE and drove JANE DOE to the Sally Port area of the parking lot of the Pomona Police Department for a short while.

190.    Also as shown above, defendants ARELLANES and/or DOES 1 and

2 then took JANE DOE into the Pomona Police Department to be searched by a female police officer there, and JANE DOE was then searched by a female police officer there.

191.   Also as shown above, defendants ARELLANES and/or DOES 1 and 2 then left the Pomona Police Department with JANE DOE and departed to the Claremont Police Department with JANE DOE handcuffed in the back seat of his/their patrol car.

192.   Also as shown above, on the way to the Claremont Police Department police station defendants ARELLANES and/or DOES 1 and 2 stopped his/their patrol car(s) and again got JANE DOE out of the car and again frisked JANE DOE by pressing her against the side of his/their patrol car(s); again sexually assaulting her by feeling her up by his searching up and down her body with his/their hands.

193.   Also as shown above, as defendants ARELLANES and/or DOES 1 and 2 was/were driving to and into the Sally Port of the Claremont Police Department, several times he/they told JANE DOE that he/they would make sure that she would be booked and processed quickly, and that ARELLANES and/or DOES 1 and 2 would be waiting for her when she got out of the Claremont Police Department jail and station following her booking and her being released on a Citation for violation of Cal. Health & Safety Code § 11364.

194.   Also as shown above, while JANE DOE was incarcerated in the Claremont Police Department Jail she was given a cup of water by defendants ARELLANES and/or DOES 2 and 3.

195.   Also as shown above, after drinking that cup of water, JANE DOE felt that defendants ARELLANES and DOES 2 and 3 spiked that glass of water with some sort of drug, as later on she felt drugged and disoriented.

196.   Also as shown above, JANE DOE was abnormally quickly put

through the booking process at the Claremont Police Department's jail facility.

197.   Also as shown above, when JANE DOE exited the jail she saw defendants ARELLANES and/or DOES 2 through 4, inclusive, his/their patrol car(s), waiting for her.

198.   Also as shown above, when JANE DOE saw defendants ARELLANES and DOES 2 through 4, inclusive, waiting for her in his/their patrol car, she quickly walked to the other side of the intersection to let defendants ARELLANES and DOES 2 through 4, inclusive, know that she wanted to get and to stay away from him. However, JANE DOE was now under the influence of whatever drug that defendants ARELLANES and DOES 2 and 3 spiked that glass of water with, and she had difficulty walking as she was now disoriented from that drug.

199.   Also as shown above, thereafter, JANE DOE continued to walk home in the early hours of February 17, 2024 from the Claremont Police Department and defendants ARELLANES and DOES 2 through 4, inclusive, followed her in his/their patrol car(s) and asked JANE DOE if she wanted a ride.

200.   Also as shown above, JANE DOE had no car and no money, was disoriented from being drugged, and did not want to, and did not feel that she could walk all of the way home, back to Highland, San Bernardino County, California in her drugged and disoriented state.

201.   Also as shown above, accordingly, JANE DOE reluctantly accepted defendants ARELLANES' and DOES 2's through 4's, inclusive's offer to give her a ride, and said defendant(s) drove JANE DOE to the Montclair Transcenter[21] for her to catch a bus back home, in large part due to her disoriented stated.

---

[21] Montclair Transcenter, 5091 Richton Street, Montclair, CA 91763.

202.   Also as shown above, when they arrived at the Montclair Transcenter defendant ARELLANES drove to a dark and remote area of the parking lot and parked his patrol car there.

203.   Also as shown above, defendant ARELLANES then walked around from the driver's seat/side of the patrol car to the passenger side of the patrol car, with his erect penis protruding out of his pants, and grabbed JANE DOE's head and physically forced JANE DOE's head down onto his penis and physically forced her to orally copulate him, all while JANE DOE was looking at defendant ARELLANES' pistol, all while JANE DOE was in a drugged and disoriented state caused by ARELLANES and DOES 2 through 4, inclusive drugging her, all while ARELLANES was scaring her to not resist her head being pulled down onto ARELLANES' penis[22], and all while JANE DOE was scared not to orally copulate him due to his power over her as a police officer, due to his violent behavior, and all while she was scared that under the circumstances, including her drugged and disoriented state, that ARELLANES would physically harm her for any refusal, resistance of failure to orally copulate him.

204.   After defendant ARELLANES ejaculated into and onto JANE DOE, he then left JANE DOE at the Montclair Transcenter.

205.   As alleged above, defendants ARELLANES and DOES 1 through 4, inclusive, intended to cause harmful offensive contact with plaintiff JANE DOE by groping her buttocks, the inside of her crotch area and her breasts when he repeatedly patted her down and searched her.

206.   In addition, also as alleged above, defendants ARELLANES and

---

[22] Notwithstanding her actual initial physical resistance to having her head being pulled down onto ARELLANES' penis.

DOES 1 through 4, inclusive, drugging JANE DOE, and in her drugged state grabbing JANE DOE's head and physically forcing JANE DOE's head down onto his erect penis and physically forcing her to orally copulate him.

207. Plaintiff JANE DOE did not consent to those actions by the defendants ARELLANES and DOES 1 through 4, inclusive, of groping plaintiff JANE DOE's buttocks, the inside of her crotch area and her breasts when he repeatedly patted her down and searched her, and she did not consent to said defendants drugging her, and in her drugged state grabbing JANE DOE's head and physically forcing JANE DOE's head down onto defendant ARELLANES' erect penis and physically forcing her to orally copulate him.

208. Plaintiff JANE DOE was severely harmed and offended by defendants ARELLANES' and DOES 1 through 4, inclusive's conduct.

209. As shown above, during the February 16, 2024 through February 17, 2024 incident complained of above, defendants ARELLANES and DOES 1 through 10, inclusive, were acting in the course of and within the scope of their employment with defendant City of Claremont.

210. Defendants City of Claremont, ARELLANES and DOES 1 through 10, inclusive, are liable to plaintiff JANE DOE for Battery under California state law via Cal. Gov't Code §§ 815.2 and 820.

211. As a direct and proximate result of the actions of said defendants ARELLANES and DOES 1 through 4, inclusive, complained of herein, plaintiff JANE DOE was: 1) substantially physically, mentally and emotionally injured, and suffered great physical, mental and emotional injury, distress, pain and suffering; 2) incurred attorney's fees and associated litigation and other related costs, and 3) incurred medical and psychological bills and costs, and other special and general damages and expenses, all in an amount to be proven at trial, in excess of $20,000,000.00.

212.   The actions by said defendants were committed maliciously, oppressively and in reckless disregard of plaintiff's constitutional rights, sufficient for an award of punitive/exemplary damages against all defendants and each of them, save defendant CITY, in an amount to be proven at trial, in excess of $20,000,000.00 against each defendant, save defendant City of Claremont.

**SIXTH CAUSE OF ACTION**
**CALIFORNIA STATE LAW CLAIM**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(Against all Defendants)**

213.   Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 212, inclusive, above, as if set forth in full herein.

214.   As shown above, shortly before midnight on the evening of February 16, 2024 JANE DOE was engaged in romantic activities with the father of her children, in the back seat of a car on small dirt road on Mount Baldy Road, in Padua Hills, Claremont, California.

215.   Also as shown above, JANE DOE was approached by defendant Claremont Police Department police officers ARELLANES and DOES 1 and 2.

216.   Also as shown above, defendants ARELLANES and/or DOES 1 and 2 noticed a glass pipe inside of JANE DOE's car and ordered her and the father of her children to get dressed and to exit the vehicle.

217.   Also as shown above, JANE DOE and the father of her children both complied and got out of the vehicle and JANE DOE was handcuffed by defendants ARELLANES and/or DOES 1 and 2.

218.   Also as shown above, defendants ARELLANES and/or DOES 1 and 2 then searched JANE DOE's car, left the glass pipe in JANE DOE's car, left JANE DOE's children's father at JANE DOE's car, placed JANE DOE in his/their

patrol car, and searched JANE DOE's car over her objection after asking for her consent to do so.

219.    Also as shown above, defendants ARELLANES and/or DOES 1 and 2 then called for back-up Claremont Police Department police officers came to the scene and DOES 3 and 4 arrived at the scene of the incident on Mount Baldy Road.

220.    Also as shown above, defendants ARELLANES and DOES 1 and 2 then frisked JANE DOE.

221.    Also as shown above, after DOES 3 and 4 left the scene on Mt. Baldy Road, defendants ARELLANES and DOES 1 and 2 then told JANE DOE that she was under arrest and that her friend, the father of her children, could take the car.

222.    Also as shown above, JANE DOE was told that she would be taken to the Pomona station to be searched by a female officer because there were no females at his station.

223.    Also as shown above, on the way to the Pomona Police Station defendants ARELLANES and DOES 1 and 2 asked JANE DOE some questions that made JANE DOE uncomfortable.

224.    Also as shown above, he/they asked JANE DOE if she liked Mexicans?

225.    Also as shown above, he/they also asked JANE DOE if he/they was/were the nicest policeman/policemen that JANE DOE had ever met?

226.    Also as shown above, when JANE DOE asked why he/they asked that, he/they said because he/they could have arrested her and her friend and impounded the car, but he/they chose not to do so.

227.    Also as shown above, on the way to the Pomona Police Department police station defendants ARELLANES and/or DOES 1 and 2 stopped his/their

patrol car several times. Each time defendants ARELLANES and/or DOES 1 and 2 pressed JANE DOE's handcuffed body against the side of his/their patrol car with the front of his/their torso, he/they pressed his/their mid-body and genitals against JANE DOE's body, and ran his/their hands up and down along JANE DOE's legs, rear end, and the side and front of her torso; essentially feeling her up and groping her in a sexually assaultive manner.

228.   Also as shown above, defendants ARELLANES and/or DOES 1 and 2 also ran his/their hands up and down along JANE DOE's legs, rear end, and the side and front of her torso; essentially feeling her up and groping her in a sexually assaultive manner.

229.   Also as shown above, when defendants ARELLANES and/or DOES 1 and 2 reached the Pomona Police Department with JANE DOE in the very early hours of February 17, 2024, defendant ARELLANES asked JANE DOE if she would "suck his dick", and JANE DOE said, "No, what are you talking about?"

230.   Also as shown above, thereafter, while in the Pomona Police Department parking lot defendants ARELLANES and/or DOES 1 and 2 again got JANE DOE out of the patrol car and again pressed JANE DOE's handcuffed body against the side of his/their patrol car with the front of his/their torso, and he/they pressed his/their mid-body and genitals against JANE DOE's body, and ran his/their hands up and down along JANE DOE's legs, rear end, and the side and front of her torso; essentially feeling her up and groping her in a sexually assaultive manner.

231.   Also as shown above, thereafter, defendants ARELLANES and/or DOES 1 and 2 took JANE DOE and drove JANE DOE to the Sally Port area of the parking lot of the Pomona Police Department for a short while.

232.   Also as shown above, defendants ARELLANES and/or DOES 1 and

2 then took JANE DOE into the Pomona Police Department to be searched by a female police officer there, and JANE DOE was then searched by a female police officer there.

233.   Also as shown above, defendants ARELLANES and/or DOES 1 and 2 then left the Pomona Police Department with JANE DOE and departed to the Claremont Police Department with JANE DOE handcuffed in the back seat of his/their patrol car.

234.   Also as shown above, on the way to the Claremont Police Department

police station defendants ARELLANES and/or DOES 1 and 2 stopped his/their patrol car(s) and again got JANE DOE out of the car and again frisked JANE DOE by pressing her against the side of his/their patrol car(s); again sexually assaulting her by feeling her up by his searching up and down her body with his/their hands.

235.   Also as shown above, as defendants ARELLANES and/or DOES 1 and 2 was/were driving to and into the Sally Port of the Claremont Police Department, several times he/they told JANE DOE that he/they would make sure that she would be booked and processed quickly, and that ARELLANES and/or DOES 1 and 2 would be waiting for her when she got out of the Claremont Police Department jail and station following her booking and her being released on a Citation for violation of Cal. Health & Safety Code § 11364.

236.   Also as shown above, while JANE DOE was incarcerated in the Claremont Police Department Jail she was given a cup of water by defendants ARELLANES and/or DOES 2 and 3.

237.   Also as shown above, after drinking that cup of water, JANE DOE felt that defendants ARELLANES and DOES 2 and 3 spiked that glass of water with some sort of drug, as later on she felt drugged and disoriented.

238.   Also as shown above, JANE DOE was abnormally quickly put through the booking process at the Claremont Police Department's jail facility.

239.   Also as shown above, when JANE DOE exited the jail she saw defendants ARELLANES and/or DOES 2 through 4, inclusive, his/their patrol car(s), waiting for her.

240.   Also as shown above, when JANE DOE saw defendants ARELLANES and DOES 2 through 4, inclusive, waiting for her in his/their patrol car, she quickly walked to the other side of the intersection to let defendants ARELLANES and DOES 2 through 4, inclusive, know that she wanted to get and to stay away from him. However, JANE DOE was now under the influence of whatever drug that defendants ARELLANES and DOES 2 and 3 spiked that glass of water with, and she had difficulty walking as she was now disoriented from that drug.

241.   Also as shown above, thereafter, JANE DOE continued to walk home in the early hours of February 17, 2024 from the Claremont Police Department and defendants ARELLANES and DOES 2 through 4, inclusive, followed her in his/their patrol car(s) and asked JANE DOE if she wanted a ride.

242.   Also as shown above, JANE DOE had no car and no money, was disoriented from being drugged, and did not want to, and did not feel that she could walk all of the way home, back to Highland, San Bernardino County, California in her drugged and disoriented state.

243.   Also as shown above, accordingly, JANE DOE reluctantly accepted

defendants ARELLANES' and DOES 2's through 4's, inclusive's offer to give her a ride, and said defendant(s) drove JANE DOE to the Montclair Transcenter[23] for her to catch a bus back home, in large part due to her disoriented stated.

244.    Also as shown above, when they arrived at the Montclair Transcenter defendant ARELLANES drove to a dark and remote area of the parking lot and parked his patrol car there.

245.    Also as shown above, defendant ARELLANES then walked around from the driver's seat/side of the patrol car to the passenger side of the patrol car, with his erect penis protruding out of his pants, and grabbed JANE DOE's head and physically forced JANE DOE's head down onto his penis and physically forced her to orally copulate him, all while JANE DOE was looking at defendant ARELLANES' pistol, all while JANE DOE was in a drugged and disoriented state caused by ARELLANES and DOES 2 through 4, inclusive drugging her, all while ARELLANES was scaring her to not resist her head being pulled down onto ARELLANES' penis[24], and all while JANE DOE was scared not to orally copulate him due to his power over her as a police officer, due to his violent behavior, and all while she was scared that under the circumstances, including her drugged and disoriented state, that ARELLANES would physically harm her for any refusal, resistance of failure to orally copulate him.

246.    After defendant ARELLANES ejaculated into and onto JANE DOE, he then left JANE DOE at the Montclair Transcenter.

247.    As alleged above, defendants ARELLANES and DOES 1 through 4, inclusive, intended to cause plaintiff JANE DOE to suffer severe and extreme

---

[23] Montclair Transcenter, 5091 Richton Street, Montclair, CA 91763.
[24] Notwithstanding her actual initial physical resistance to having her head being pulled down onto ARELLANES' penis.

emotional distress, and did cause her to suffer severe and extreme emotional distress by groping her buttocks, the inside of her crotch area and her breasts when he repeatedly patted her down and searched her.

248.   In addition, also as alleged above, defendants ARELLANES and DOES 1 through 4, inclusive, intended to cause plaintiff JANE DOE to suffer severe and extreme emotional distress, and did cause her to suffer severe and extreme emotional distress by drugging JANE DOE, and in her drugged state grabbing JANE DOE's head and physically forcing JANE DOE's head down onto his erect penis and physically forcing her to orally copulate him.

249.   Plaintiff JANE DOE did not consent to those actions by the defendants ARELLANES and DOES 1 through 4, inclusive, of groping plaintiff JANE DOE's buttocks, the inside of her crotch area and her breasts when he repeatedly patted her down and searched her, and she did not consent to said defendants drugging her, and in her drugged state grabbing JANE DOE's head and physically forcing JANE DOE's head down onto defendant ARELLANES' erect penis and physically forcing her to orally copulate him, nor were any of those above-described actions by defendants complained of privileged in any way.

250.   Defendants ARELLANES' and DOES 1 through 4, inclusive's conduct complained of above was outrageous, despicable and not the type of conduct tolerated in a civilized society.

251.   As shown above, during the February 16, 2024 through February 17, 2024 incident complained of above, defendants ARELLANES and DOES 1 through 10, inclusive, were acting in the course of and within the scope of their employment with defendant City of Claremont.

252.   Defendants City of Claremont, ARELLANES and DOES 1 through 10, inclusive, are liable to plaintiff JANE DOE for Battery under California state law via Cal. Gov't Code §§ 815.2 and 820.

253.    As a direct and proximate result of the actions of said defendants ARELLANES and DOES 1 through 4, inclusive, complained of herein, plaintiff JANE DOE was: 1) substantially physically, mentally and emotionally injured, and suffered great physical, mental and emotional injury, distress, pain and suffering; 2) incurred attorney's fees and associated litigation and other related costs, and 3) incurred medical and psychological bills and costs, and other special and general damages and expenses, all in an amount to be proven at trial, in excess of $20,000,000.00.

254.    The actions by said defendants were committed maliciously, oppressively and in reckless disregard of plaintiff's constitutional rights, sufficient for an award of punitive/exemplary damages against all defendants and each of them, save defendant CITY, in an amount to be proven at trial, in excess of $20,000,000.00 against each defendant, save defendant City of Claremont.

## SEVENTH CAUSE OF ACTION
### CALIFORNIA STATE LAW CLAIM
### BANE ACT – CAL. CIVIL CODE § 52.1
### (Against all Defendants)

255.    Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 254, inclusive, above, as if set forth in full herein.

256.    As shown above, shortly before midnight on the evening of February 16, 2024 JANE DOE was engaged in romantic activities with the father of her children, in the back seat of a car on small dirt road on Mount Baldy Road, in Padua Hills, Claremont, California.

257.    Also as shown above, JANE DOE was approached by defendant Claremont Police Department police officers ARELLANES and DOES 1 and 2.

258.    Also as shown above, defendants ARELLANES and/or DOES 1 and

2 noticed a glass pipe inside of JANE DOE's car and ordered her and the father of her children to get dressed and to exit the vehicle.

259.   Also as shown above, JANE DOE and the father of her children both complied and got out of the vehicle and JANE DOE was handcuffed by defendants ARELLANES and/or DOES 1 and 2.

260.   Also as shown above, defendants ARELLANES and/or DOES 1 and 2 then searched JANE DOE's car, left the glass pipe in JANE DOE's car, left JANE DOE's children's father at JANE DOE's car, placed JANE DOE in his/their patrol car, and searched JANE DOE's car over her objection after asking for her consent to do so.

261.   Also as shown above, defendants ARELLANES and/or DOES 1 and 2 then called for back-up Claremont Police Department police officers came to the scene and DOES 3 and 4 arrived at the scene of the incident on Mount Baldy Road.

262.   Also as shown above, defendants ARELLANES and DOES 1 and 2 then frisked JANE DOE.

263.   Also as shown above, after DOES 3 and 4 left the scene on Mt. Baldy Road, defendants ARELLANES and DOES 1 and 2 then told JANE DOE that she was under arrest and that her friend, the father of her children, could take the car.

264.   Also as shown above, JANE DOE was told that she would be taken to the Pomona station to be searched by a female officer because there were no females at his station.

265.   Also as shown above, on the way to the Pomona Police Station defendants ARELLANES and DOES 1 and 2 asked JANE DOE some questions that made JANE DOE uncomfortable.

266.   Also as shown above, he/they asked JANE DOE if she liked Mexicans?

267.   Also as shown above, he/they also asked JANE DOE if he/they was/were the nicest policeman/policemen that JANE DOE had ever met?

268.   Also as shown above, when JANE DOE asked why he/they asked that, he/they said because he/they could have arrested her and her friend and impounded the car, but he/they chose not to do so.

269.   Also as shown above, on the way to the Pomona Police Department police station defendants ARELLANES and/or DOES 1 and 2 stopped his/their patrol car several times. Each time defendants ARELLANES and/or DOES 1 and 2 pressed JANE DOE's handcuffed body against the side of his/their patrol car with the front of his/their torso, he/they pressed his/their mid-body and genitals against JANE DOE's body, and ran his/their hands up and down along JANE DOE's legs, rear end, and the side and front of her torso; essentially feeling her up and groping her in a sexually assaultive manner.

270.   Also as shown above, defendants ARELLANES and/or DOES 1 and 2 also ran his/their hands up and down along JANE DOE's legs, rear end, and the side and front of her torso; essentially feeling her up and groping her in a sexually assaultive manner.

271.   Also as shown above, when defendants ARELLANES and/or DOES 1 and 2 reached the Pomona Police Department with JANE DOE in the very early hours of February 17, 2024, defendant ARELLANES asked JANE DOE if she would "suck his dick", and JANE DOE said, "No, what are you talking about?"

272.   Also as shown above, thereafter, while in the Pomona Police Department parking lot defendants ARELLANES and/or DOES 1 and 2 again got JANE DOE out of the patrol car and again pressed JANE DOE's handcuffed body against the side of his/their patrol car with the front of his/their torso, and he/they pressed his/their mid-body and genitals against JANE DOE's body, and ran his/their hands up and down along JANE DOE's legs, rear end, and the side and

front of her torso; essentially feeling her up and groping her in a sexually assaultive manner.

273.    Also as shown above, thereafter, defendants ARELLANES and/or DOES 1 and 2 took JANE DOE and drove JANE DOE to the Sally Port area of the parking lot of the Pomona Police Department for a short while.

274.    Also as shown above, defendants ARELLANES and/or DOES 1 and 2 then took JANE DOE into the Pomona Police Department to be searched by a female police officer there, and JANE DOE was then searched by a female police officer there.

275.    Also as shown above, defendants ARELLANES and/or DOES 1 and 2 then left the Pomona Police Department with JANE DOE and departed to the Claremont Police Department with JANE DOE handcuffed in the back seat of his/their patrol car.

276.    Also as shown above, on the way to the Claremont Police Department police station defendants ARELLANES and/or DOES 1 and 2 stopped his/their patrol car(s) and again got JANE DOE out of the car and again frisked JANE DOE by pressing her against the side of his/their patrol car(s); again sexually assaulting her by feeling her up by his searching up and down her body with his/their hands.

277.    Also as shown above, as defendants ARELLANES and/or DOES 1 and 2 was/were driving to and into the Sally Port of the Claremont Police Department, several times he/they told JANE DOE that he/they would make sure that she would be booked and processed quickly, and that ARELLANES and/or DOES 1 and 2 would be waiting for her when she got out of the Claremont Police Department jail and station following her booking and her being released on a Citation for violation of Cal. Health & Safety Code § 11364.

278.    Also as shown above, while JANE DOE was incarcerated in the

Claremont Police Department Jail she was given a cup of water by defendants ARELLANES and/or DOES 2 and 3.

279.    Also as shown above, after drinking that cup of water, JANE DOE felt that defendants ARELLANES and DOES 2 and 3 spiked that glass of water with some sort of drug, as later on she felt drugged and disoriented.

280.    Also as shown above, JANE DOE was abnormally quickly put through the booking process at the Claremont Police Department's jail facility.

281.    Also as shown above, when JANE DOE exited the jail she saw defendants ARELLANES and/or DOES 2 through 4, inclusive, his/their patrol car(s), waiting for her.

282.    Also as shown above, when JANE DOE saw defendants ARELLANES and DOES 2 through 4, inclusive, waiting for her in his/their patrol car, she quickly walked to the other side of the intersection to let defendants ARELLANES and DOES 2 through 4, inclusive, know that she wanted to get and to stay away from him. However, JANE DOE was now under the influence of whatever drug that defendants ARELLANES and DOES 2 and 3 spiked that glass of water with, and she had difficulty walking as she was now disoriented from that drug.

283.    Also as shown above, thereafter, JANE DOE continued to walk home in the early hours of February 17, 2024 from the Claremont Police Department and defendants ARELLANES and DOES 2 through 4, inclusive, followed her in his/their patrol car(s) and asked JANE DOE if she wanted a ride.

284.    Also as shown above, JANE DOE had no car and no money, was disoriented from being drugged, and did not want to, and did not feel that she could walk all of the way home, back to Highland, San Bernardino County, California in her drugged and disoriented state.

285.    Also as shown above, accordingly, JANE DOE reluctantly accepted

defendants ARELLANES' and DOES 2's through 4's, inclusive's offer to give her a ride, and said defendant(s) drove JANE DOE to the Montclair Transcenter[25] for her to catch a bus back home, in large part due to her disoriented stated.

286.    Also as shown above, when they arrived at the Montclair Transcenter defendant ARELLANES drove to a dark and remote area of the parking lot and parked his patrol car there.

287.    Also as shown above, defendant ARELLANES then walked around from the driver's seat/side of the patrol car to the passenger side of the patrol car, with his erect penis protruding out of his pants, and grabbed JANE DOE's head and physically forced JANE DOE's head down onto his penis and physically forced her to orally copulate him, all while JANE DOE was looking at defendant ARELLANES' pistol, all while JANE DOE was in a drugged and disoriented state caused by ARELLANES and DOES 2 through 4, inclusive drugging her, all while ARELLANES was scaring her to not resist her head being pulled down onto ARELLANES' penis[26], and all while JANE DOE was scared not to orally copulate him due to his power over her as a police officer, due to his violent behavior, and all while she was scared that under the circumstances, including her drugged and disoriented state, that ARELLANES would physically harm her for any refusal, resistance of failure to orally copulate him.

288.    After defendant ARELLANES ejaculated into and onto JANE DOE, he then left JANE DOE at the Montclair Transcenter.

289.    As alleged above, defendants ARELLANES and DOES 1 through 4, inclusive, intended to cause plaintiff JANE DOE to suffer severe and extreme

---

[25] Montclair Transcenter, 5091 Richton Street, Montclair, CA 91763.
[26] Notwithstanding her actual initial physical resistance to having her head being pulled down onto ARELLANES' penis.

emotional distress, and did cause her to suffer severe and extreme emotional distress by groping her buttocks, the inside of her crotch area and her breasts when he repeatedly patted her down and searched her.

290.   In addition, also as alleged above, defendants ARELLANES and DOES 1 through 4, inclusive, intended to cause plaintiff JANE DOE to suffer severe and extreme emotional distress, and did cause her to suffer severe and extreme emotional distress by drugging JANE DOE, and in her drugged state grabbing JANE DOE's head and physically forcing JANE DOE's head down onto his erect penis and physically forcing her to orally copulate him.

291.   Plaintiff JANE DOE did not consent to those actions by the defendants ARELLANES and DOES 1 through 4, inclusive, of groping plaintiff JANE DOE's buttocks, the inside of her crotch area and her breasts when he repeatedly patted her down and searched her, and she did not consent to said defendants drugging her, and in her drugged state grabbing JANE DOE's head and physically forcing JANE DOE's head down onto defendant ARELLANES' erect penis and physically forcing her to orally copulate him, nor were any of those above-described actions by defendants complained of privileged in any way.

292.   Defendants ARELLANES' and DOES 1 through 4, inclusive's coerced plaintiff JANE DOE also used excessive / unreasonable force upon plaintiff by slamming her against his patrol car and by sexually assaulting / sexually battering her by repeatedly frisking and searching her as described above.

293.   Defendants ARELLANES' and DOES 1 through 4, inclusive's coerced plaintiff JANE DOE into orally copulating him by drugging her, by tricking her into getting into his patrol car, and by using excessive / unreasonable force upon her by forcefully pulling her head down onto his erect penis and holding her head down onto his penis until he ejaculated in her and on her.

294.   Defendants ARELLANES' and DOES 1 through 4, inclusive's

actions constituted a violation of Cal. Civil Code § 52.1.

295.   As shown above, during the February 16, 2024 through February 17, 2024 incident complained of above, defendants ARELLANES and DOES 1 through 10, inclusive, were acting in the course of and within the scope of their employment with defendant City of Claremont.

296.   Defendants City of Claremont, ARELLANES and DOES 1 through 10, inclusive, are liable to plaintiff JANE DOE for violation of Cal. Civil Code § 52.1 under California state law via Cal. Gov't Code §§ 815.2 and 820.

297.   As a direct and proximate result of the actions of said defendants ARELLANES and DOES 1 through 4, inclusive, complained of herein, plaintiff JANE DOE was: 1) substantially physically, mentally and emotionally injured, and suffered great physical, mental and emotional injury, distress, pain and suffering; 2) incurred attorney's fees and associated litigation and other related costs, and 3) incurred medical and psychological bills and costs, and other special and general damages and expenses, all in an amount to be proven at trial, in excess of $20,000,000.00.

298.   The actions by said defendants were committed maliciously, oppressively and in reckless disregard of plaintiff's constitutional rights, sufficient for an award of punitive/exemplary damages against all defendants and each of them, save defendant CITY, in an amount to be proven at trial, in excess of $20,000,000.00 against each defendant, save defendant City of Claremont.

**WHEREFORE**, plaintiff JANE DOE prays for Judgment as follows:

1) For a judgment against all defendants for compensatory damages in an amount in excess of $20,000,000.00;

2) For a judgment against all defendants for punitive / exemplary damages in an amount in excess of $20,000,000.00 against each defendant, save defendant City of Claremont;

3) For an award of reasonable attorney's fees against all defendants; and

4) For costs of suit herein against all defendants.

_____

JERRY L. STEERING, ATTORNEY
FOR PLAINTIFF JANE DOE